IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| JOEY LAWRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | )   Case No. _____ |
| v. | ) |
| | ) |
| BICKFORD SENIOR LIVING GROUP, LLC, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DAMAGES**

Plaintiff Joe Lawrence (hereinafter "Plaintiff") brings this Complaint for Damages against Defendant Bickford Senior Living Group, LLC (hereinafter "Defendant") and alleges and states as follows:

**Parties and Jurisdiction**

1. Plaintiff is a male citizen of the United States, residing in Kansas City, Jackson County, Missouri.

2. Defendant is a limited liability company organized under the laws of Kansas. At all relevant times, Defendant was authorized to conduct business in the state of Kansas and was doing business in the state of Kansas.

3. At all relevant times, Defendant employed fifteen (15) employees and was engaged in interstate commerce.

4. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

5. At all relevant times Defendant has maintained and operated a place of business at 5350 W. 61st Pl., Mission, KS 66205.

6. Defendant employed Plaintiff at their location at 5350 W. 61st Pl., Mission, KS 66205 from approximately January 2014, until on or about October 3, 2014.

7. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States.

8. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(a) as Defendant's principle place of business is located at 13795 S. Mur Len Rd., Ste. 301, Olathe, Johnson County, Kansas 66062.

## Administrative Procedures

9. On or about March 30, 2015, Plaintiff timely filed a charge of discrimination against Defendant on the basis of Plaintiff's race with the Equal Employment Opportunity Commission (hereinafter "EEOC") (attached as Exhibit 1 and incorporated herein by reference).

10. On or about June 2, 2015, the EEOC issued to Plaintiff his Dismissal and Notice of Rights (attached as Exhibit 2 and incorporated herein by reference), Plaintiff received the Notice on June 4, 2015, and this lawsuit was filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

11. The aforesaid charges of discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of an EEOC investigation, which could reasonably be expected to have grown out of the charge of discrimination.

12. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

13. This Complaint was filed within the applicable statute of limitations.

## General Allegations Common To All Counts

14. Plaintiff was an employee of Defendant from January 2014 until on or about October 3, 2014.

15. Defendant employed Plaintiff as a cook.

16. Plaintiff is male.

17. Plaintiff worked more than forty (40) hours every week that he worked for Defendant.

18. Beginning in approximately February 2014, Plaintiff's kitchen manager and immediate supervisor, Candice Berger (hereinafter "Berger"), a female, began making inappropriate physical contact with Plaintiff.

19. Berger would make inappropriate physical contact with Plaintiff, and Plaintiff would request that she stop.

20. In one instance, Berger entered the kitchen without Plaintiff's knowledge and, despite having plenty of room to stand to avoid physical contact with Plaintiff, instead stood in a location that resulted in Plaintiff's bottom bumping into her when he bent over to remove items from an oven.

21. Berger also showed Plaintiff pictures of herself in skimpy, tight-fitting clothing, and asked Plaintiff what he thought.

22. In approximately April 2014, Plaintiff reported Berger's conduct to Berger's supervisor, Alex Silverman, the Director (hereinafter "Silverman"), stating that he felt that Berger was sexually harassing him.

3

23. Silverman told Plaintiff that he would make a note of it and asked Plaintiff to report any further conduct.

24. The day after Plaintiff reported Berger's harassment to Silverman in April 2014, Berger again chose to stand in a location in the kitchen that would have resulted in inappropriate physical between Plaintiff and herself had Plaintiff not realized she was there.

25. Plaintiff told Berger that he was not interested in her and that he loved his wife.

26. After Plaintiff reported Berger's harassment to Silverman and confronted Berger about her conduct, Berger began to treat Plaintiff differently than other employees.

27. Berger also began disciplining Plaintiff for conduct that had never been an issue before.

28. For instance, only after Plaintiff made a good faith report of sexual harassment, Berger began disciplining Plaintiff for the consistency of the food he would have to grind for those residents that could not chew solid food.

29. Plaintiff had not changed the consistency of his ground food, had never been disciplined and had been grinding his food to the same consistency as other employees who had not reported sexual harassment and who were not disciplined.

30. Throughout Plaintiff's employment, Plaintiff regularly worked between one (1) and twelve (12) hours beyond forty (40) hours per workweek.

31. Beginning on or around June 1, 2014, Berger began requiring Plaintiff to clock out as close to 5:30 as possible, then complete his necessary work.

32. At that time, Plaintiff told Berger that he believed it was against the law for him to keep working after he clocked out, and asked Berger if he was supposed to leave necessary work undone after 5:30, thereby making a complaint regarding unlawful pay practices.

33. Berger again insisted that Plaintiff clock out as close to 5:30 as possible, then complete necessary work.

34. Despite clocking our as close to 5:30 pm as possible, Plaintiff continued to work, on average, the same number of hours beyond forty (40) per workweek that he was working prior to June 1, 2014.

35. Because Plaintiff was working off the clock after 5:30 pm, plaintiff was not getting paid one and one-half times his regular rate of pay for the full number of hours he was working beyond forty (40) in a workweek.

36. In approximately late September 2014, Plaintiff, frustrated that he was not being paid for work done after 5:30 pm, spoke with a coworker, asking if Berger required him to clock out at 5:30 pm if his work was not completed.

37. The coworker informed Plaintiff that he was rarely able to complete his work by 5:30 pm, and that Berger did not require him to clock out early.

38. The coworker further confirmed that Berger herself, on nights that she was required to close the kitchen, also did not finish her work before 5:30 pm, and also did not clock out early.

39. Upon hearing that Berger and one other coworker were remaining on the clock after 5:30 pm to complete necessary work, Plaintiff too began remaining on the clock until he completed his necessary work instead of clocking out as close to 5:30 pm as possible.

40. On or around October 3, 2014, Defendant terminated Plaintiff's employment.

41. Defendant has its principle place of business in Olathe, Kansas.

42. Defendant is engaged in the operation of institutions primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institutions.

43. Specifically, Defendant operates, through related entities and/or subsidiaries, independent senior living, assisted senior living, and memory care facilities in approximately forty-eight (48) cities in nine (9) states.

44. Defendant and its related entities and/or subsidiaries perform related activities for a common business purpose, to wit, provision of independent senior living, assisted senior living, and memory care services to residents living in their approximately forty-eight (48) locations, all doing business with trade names that include the name "Bickford."

45. Plaintiff prepared meals for residents at one of Defendant's locations, conduct performed in connection with the operation an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution.

46. Defendant has employees engaged in trade, commerce, transportation, transmission, or communication among the several States, to wit, Defendant operates the payroll for its employees and the employees of its related entities and/or subsidiaries found across nine (9) states.

47. Defendant, along with its related entities and/or subsidiaries, has an annual gross volume of business done in excess of $500,000.

## COUNT I

### Violation under 42 U.S.C. §§ 2000e *et seq.* - Retaliation

48. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

49. Plaintiff made a good faith report of sexual harassment and opposed sexual harassment and therefore engaged in protected activities.

50. Defendant disciplined Plaintiff for conduct for which other employees who had not made good faith reports of sexual harassment were not disciplined, and ultimately terminated Plaintiff.

51. Plaintiff's good faith report of sexual harassment and opposition to sexual harassment was a determining factor in Defendant's decision to treat Plaintiff differently from other employees and ultimately terminate Plaintiff's employment.

52. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of respondent superior.

53. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including retaliation for opposing or reporting sexual harassment.

54. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the civil rights laws, including Title VII.

55. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of the Defendant, based on his report of sexual harassment, in violation of Title VII.

56. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

57. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional and related compensatory damages.

58. By failing to take prompt and effective remedial action and instead of re-employing the Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized discrimination against the Plaintiff.

59. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

60. Plaintiff is also entitled to recover reasonable attorney's fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, including emotional distress, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II

### Violation under 29 U.S.C. §§ 201 *et seq.* - Failure to Pay Overtime Pay

61. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

62. Plaintiff was employed with Defendant on or after January 1, 2014.

63. In Plaintiff's work for Defendant, Plaintiff was employed by an enterprise engaged in commerce.

64. Defendant failed to pay Plaintiff overtime pay for all hours worked by Plaintiff in excess of forty (40) in one or more workweeks.

65. Defendant's failure to pay Plaintiff overtime pay was willful and was not done in good faith.

66. Plaintiff is entitled to payment for unpaid wages at a rate of pay of one and one-half times his regular rate of pay for all work performed in excess of forty (40) hours per workweek.

67. Plaintiff is also entitled to recover reasonable attorney's fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages, including, but not limited to: back-pay, liquidated damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III

### Violation under 29 U.S.C. §§ 201 *et seq.* - Retaliation

68. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

69. Plaintiff made a good faith complaint of Defendant's violation of the FLSA's overtime pay requirements.

70. Defendant terminated Plaintiff.

71. Plaintiff's good faith complaint of Defendant's violation of the FLSA's overtime pay requirements was a determining factor in Defendant's decision to terminate Plaintiff's employment.

72. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for said actions under the doctrine of respondent superior.

73. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for filing good faith complaints of an employer's failure to comply with overtime laws.

74. Defendant failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the labor laws, including FLSA.

75. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of the Defendant, based on his report of illegal labor practices, in violation of the FLSA.

76. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

77. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered emotional and related compensatory damages.

78. By failing to take prompt and effective remedial action and instead of re-employing the Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized discrimination against the Plaintiff.

79. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of the Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

80. Plaintiff is also entitled to recover reasonable attorney's fees from Defendant.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including, but not limited to: back-pay, liquidated damages, lost benefits, front-pay, injunctive relief, compensatory damages, including emotional distress, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

HOLLINGSHEAD, PAULUS & ECCHER

By: _____
Ryan M. Paulus        D Kan 78276
r.paulus@hpelaw.com
Joshua P. Wunderlich  D Kan 78506
j.wunderlich@hpelaw.com
8350 N. St. Clair Ave., Ste. 225
Kansas City, Missouri 64151
Telephone        (816) 581-4040
Facsimile        (816) 741-8889

ATTORNEYS FOR PLAINTIFF

# Exhibit 1

~~Amended~~   1 of 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA  [X] EEOC | 563-2015-01004  ~~563-2015-00330~~ |

Kansas Human Rights Commission and EEOC
*State or local Agency, if any*

**Name** (indicate Mr., Ms., Mrs.): Mr. Joe Lawrence
**Home Phone** (Incl. Area Code): 816-581-4040
**Date of Birth**:

**Street Address / City, State and ZIP Code**: 8350 N. St. Clair Ave Ste 225 Kansas City, Mo 64151

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

**Name**: BICKFORD SENIOR LIVING
**No. Employees, Members**: 500 or More
**Phone No.**: 913-831-7700
**Street Address**: 5101 W. 61st Place, Mission, KS 66205

**DISCRIMINATION BASED ON**: [X] SEX  [X] RETALIATION

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest: 01-31-2014
Latest: Present

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

[blank]

RECEIVED EEOC KANSAS CITY AREA OFFICE 2015 MAR 30 AM 11:23

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

X 12/23/14  X [signature] Joe Lawrence
Date / Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

## Attachment to Amended EEOC Form 5 (5/01) for Joe Lawrence

I, Joe Lawrence, bring this Amended Charge of Discrimination against the Respondent—Bickford Senior Living, LLC ("Bickford"). Respondent Bickford is an employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*

I was an employee of Bickford and a member of a protected class pursuant to Title VII, as well as the anti-retaliation provisions thereof, because I was the subject of sexual harassment and because I made a good faith report of sexual harassment. The specific facts that give rise to my claims are as follows:

I began working for Bickford as a cook in approximately January 2014. Almost immediately after I began working at Bickford, my Kitchen Manager, Candice Berger ("Berger") began making inappropriate physical contact with me. It began when she was directing me on where to buy the polo shirts I was required to wear for my job. She put her hand on my shoulder and said, "I am going to take care of you." It made me feel uncomfortable. Shortly thereafter, Berger snuck up behind me while I was working in the kitchen. I bent over to pull food out of the oven, and, because I did not know she was there, my bottom bumped into her. She said something that led me to believe she had done it on purpose. She also started showing me pictures of herself, all in skimpy, tight fitting clothes, but did not give a reason. This also made me feel uncomfortable. Also around this time, Berger would be very rude to any other female staff, but not to the male staff, that even tried to talk to me.

In approximately April 2014, I reported Berger's conduct to the Director, Alex Silverman ("Silverman"). I told Silverman that it made me very uncomfortable. I was told by Silverman that he would make a note of it and to report any further incidents. The next day, Berger snuck up on me again, and was standing unnecessarily and inappropriately close to me. When

2015 MAR 30 AM 11:33 RECEIVED EEOC KANSAS CITY AREA OFFICE

realized she was there, I told her that I was not interested in her, and that I loved my wife. From that point forward, Berger began writing me up for minor infractions for which other employees had not been written up, including issues that I had not violated, but other staff members violated repeatedly. One example was that I had been taught how to grind food in a particular way for the residents that could not eat solid food. I had never had any complaints about the texture or coarseness of the ground food. Then, after I made a good faith report of sexual harassment and also confronted Berger about her conduct, she wrote me up for grinding the food to the wrong consistency even though I had not changed anything.

My last day of work was October 3, 2014. On that day, I was trying to unload a large food order while also working on cooking lunch. The potatoes had overcooked, but there was not enough time to recook the new potatoes, and I served the overcooked potatoes to the residents. Berger called me into the office of the Assistant Director, Linda Enlow ("Enlow"), where I was told that I was no longer needed and that they were letting me go. When I asked why, I was told that it was for poor food quality. However, I had never been formally disciplined for poor food quality other than the issue with the texture of the ground food. In fact, throughout my employment with Bickford, I was regularly complimented for the quality of my food.

In sum, I am a member of a protected class under Title VII, and the anti-retaliation provisions thereof, due to the fact that I had suffered sexual harassment, and due to the fact that I engaged in a protected activity be making a good faith report of such harassment. My supervisor repeatedly engaged in inappropriate, sexually-based conduct toward me. After I reported that conduct to her supervisor, she began treating me worse than other employees until she fired me in October. As a result of Respondents' action, I am seeking back-pay, front-pay, emotional

distress damages, punitive damages, attorney's fees, and any other remedy the Commission deems appropriate.

RECEIVED EEOC
KANSAS CITY AREA OFFICE
2015 MAR 30  AM 11: 33

# Exhibit 2

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Joe Lawrence<br>1742 Euclid Ave.<br>Kansas City, MO 64127 | From: | Kansas City Area Office<br>Gateway Tower II<br>400 State Avenue<br>Kansas City, KS 66101 |
|---|---|---|---|

[ ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 563-2015-01004 | Anne Mergenmeier, Investigator | (913) 551-5849 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

- **NOTICE OF SUIT RIGHTS** -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

Enclosures(s)

On behalf of the Commission

_/s/ Anne Mergenmeier_ for Natascha DeGuire, Area Office Director     06-02-15 *(Date Mailed)*

cc:
Bickford Senior Living
Attn: Human Resources Director
5350 W. 61st Place
Mission, KS 66205

Joshua Wunderlich
Hollingshead, Paulus & Eccher
8350 N. St. Clair Ave., Suite 225
Kansas City, MO 64151

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.